<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE CHURCH OF THE HILLS OF THE TOWNSHIP OF BEDMINSTER, et al. | CIVIL NO. 05-3332 (SRC) |
| Plaintiffs, | |
| v. | |
| THE TOWNSHIP OF BEDMINSTER, et al. | **OPINION** |
| Defendants. | |

**<u>CHESLER, District Judge</u>**

**THIS MATTER** comes before the Court on a Motion to Dismiss by Defendants

Township of Bedminster, New Jersey (the "Township") and The Board of Adjustment of the

Township of Bedminster (the "Board") (docket entry # 5).  Having considered the papers

submitted by the parties, for the reasons set forth below, and for good cause shown, the Court

**DENIES IN PART**, and **GRANTS IN PART** the Defendants' Motion.

**I.  BACKGROUND OF THE CASE**

The Plaintiff, the Church of the Hills (the "Church"), has been in operation at its present

location in the Township of Bedminster, New Jersey since 1995.  There are currently

approximately 500-600 members of the Church, which operates on a lot of 25.2 acres of

property.  The property contains a residential building as well as the present church building, which occupy approximately 24,000 - 24,500 square feet.[1]  The Church operates numerous ministries on the property, which meet at various times of the week, as well as operates a religious school which holds classes from Monday through Friday, from 8:30 to 3:30 pm.

Originally, the Church held one worship service for its entire congregation.  As the congregation expanded, the Church split the services in two.  Currently, the Church holds two services each Sunday, at 8:00 AM and 3:00 PM.  The Plaintiffs claim that, as part of the Church's religious beliefs, the entire congregation should attend services together.  Due to the space limitations of their current facility, the Church is forced to hold two Sunday services, rather than one, to serve the needs of their congregation.  The Plaintiffs' also claim that the earlier Sunday morning service is limited, by the time constraints of having to accommodate two services in a single day, to less than two hours rather than a three to three and a half hour service as mandated by the Church's religious beliefs.  Accordingly, the Plaintiffs sought to expand the Church's current facilities in order to allow the entire congregation to attend a single service every Sunday.  The Church also sought to expand its facilities to provide a Sunday school for older youths, a religious library, a Christian bookstore, dedicated prayer rooms, a choir room, facilities for religious wedding services, and other facilities to accommodate its various ministries.

The Church's property is currently in an "R-10" zone, which is a residential zone where a church and related accessory buildings are permitted as a conditional use.  The conditional use

---

[1] The actual square footage of the two existing buildings remains in dispute between the parties.  The Plaintiffs claim that the two buildings total approximately 24,000 while Defendants claim the two buildings are slightly larger, totaling 24,503 feet.

standard is that the property must abut an arterial road, which the Church's property does, and otherwise meet the same bulk standards applied to houses for floor area ratio ("FAR") and impervious coverage limits. The current Township zoning regulations for R-10 zones are a 3% total FAR, 5% impervious coverage limit, and a 10-acre minimum lot-size requirement. The Church applied for multiple variances from the Township in March 2002. To accommodate their proposed expansion, the Church sought permission to allow a 5.92% FAR and impervious coverage of 16.36%. The Church also sought additional variances for signs, variance for the distance between the church and a gazebo, and a design waiver to locate the parking lot in the front yard. Public hearings were conducted on the Church's variance request, and the Church offered additional reductions to their original site plan request in order to attempt to bring their expansion closer to what is allowable under current Township zoning regulations.[2] Even with these reductions, the Church would have required 50 acres of property to comply with the Township FAR limits without seeking a variance, and 100 acres to comply with the Township's lot coverage restrictions.

The Board denied the Church's application on May 18, 2005. The resolution denying the variance request cites numerous reasons for the denial, including increased traffic, light, and noise pollution, a negative impact on the visual landscape of the Township, the proposed size of the Church's structures was out of proportion with the neighborhood, and the proposed expansion's adverse impacts on aquifer and surface water quality due to impervious coverage.

---

[2] The Plaintiffs note that their current plan has been "considerably reduced" from what they originally sought, including the elimination of certian outdoor facilities, decreasing the size of the parking lot (from 450 to 300 spaces), lowering a steeple that required a height variance, and reducing the proposed building size by 15,000 square feet (from the 50,000 originally requested). (Pl. Br. at 4.)

The Board stated that "the approval of this application with a facility of its magnitude would essentially change the entire character of the neighborhood from an essentially rural, quiet neighborhood to one of an entirely different character . . . not envisioned by either the Master Plan or the zoning ordinance."  (Def. Br. at 4 - 5.)  The Church claims that this denial "has substantially burdened its religious exercise by preventing it from worshiping together as one congregation, participating in necessary ministries, and being accessible to its congregation." (Pl. Br. at 5.)

On July 1, 2005, the Plaintiffs brought the current Complaint against the Township and the Board, alleging violations of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et. seq.* (the "RLUIPA"), the First and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983, as well as various state law claims including similar constitutional issues under the New Jersey State Constitution, state zoning law principles, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12.2 ("NJLAD").  On October 11, 2005, the Defendants filed the current motion to dismiss the Plaintiff's action for failure to state a claim under the RLUIPA and the First and Fourteenth Amendments to the United States Constitution.  The Defendants also argue, in the alternative, that Plaintiffs' RLUIPA claims should be dismissed on the grounds that the land use provisions of the RLUIPA are unconstitutional.  While the Defendants do not challenge the Plaintiffs' state law claims in the current motion, they argue that, if the Court dismisses the Plaintiffs' federal claims, the Court should dismiss the Plaintiffs' remaining state claims for lack of subject matter jurisdiction.  For the reasons stated below, the Defendant's motion is **DENIED IN PART, GRANTED IN PART**.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under FED. R. CIV. PRO. 12(b)(6) all allegations in the Complaint must be taken as true and viewed in the light most favorable to the Plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975);  Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998);  Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the Complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's claims are based upon those documents.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  If, after viewing the allegations in the Complaint in the light most favorable to the Plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a Complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);  Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982).

## III.   DISCUSSION

The Plaintiffs' federal claims in this case are based on alleged violations of the RLUIPA statute and Title 42 U.S.C. § 1983.  Section 1983 provides civil remedies against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).  Section 1983 does not, by itself, confer any substantive rights, but rather serves as a vehicle to enforce rights granted under the Constitution or federal law.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

5

Accordingly, to state a claim under § 1983, a plaintiff must "prove a violation of the underlying constitutional right." Daniels v. Williams, 474 U.S. 327, 330 (1986). The Plaintiffs claim that the Township's denial of their zoning variances violated their constitutional protections for religious exercise afforded under the First Amendment of the United States Constitution (made applicable to the states under the Fourteenth Amendment), as well as violated their rights to Due Process and Equal Protection under the Fourteenth Amendment.

A.    **The Factual Record in This Case is Not Sufficiently Developed to Support Dismissal of Plaintiffs' Claims for Failure to State a Claim Under RLUIPA or the First Amendment.**

The RLUIPA, 42 U.S.C. § 2000cc *et seq.,* was passed largely in response to the Supreme Court's partial invalidation of the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb-2000bb-4, in City of Boerne v. Flores, 521 U.S. 507 (1997). The section of the RLUIPA relating to land use regulations establishes a "general rule" that:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly or institution
> (A)    is in furtherance of a compelling government interest; and
> (B)    is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc(a)(1). This "general rule" is carefully circumscribed to apply only to cases in which:

> (A)    the substantial burden is imposed on a program or activity that

receives Federal financial assistance, even if the burden results from
a rule of general applicability;

(B)    the substantial burden affects, or removal of that substantial burden
would affect, commerce with foreign nations, among the several
States, or with Indian tribes, even if the burden results from a rule of
general applicability; or

(C)    the substantial burden is imposed in the implementation of a land use
regulation or system of land use regulations, under which a
government makes, or has in place formal or informal procedures or
practices that permit the government to make, individualized
assessments of the proposed uses for the property involved.

42 U.S.C. § 2000cc(a)(2).  Where applicable, the statute imposes three requirements for local

land use regulations to prevent discrimination against or exclusion of religious uses:

(1)    Equal terms - No government shall impose or implement a land use
regulation in a manner that treats a religious assembly or institution
on less than equal terms with a nonreligious assembly or institution.

(2)    Nondiscrimination - No government shall impose or implement a
land use regulation that discriminates against any assembly or
institution on the basis of religion or religious denomination.

(3)    Exclusions and limits - No government shall impose or implement a
land use regulation that:

(A)    totally excludes religious assemblies from a jurisdiction; or

(B)    unreasonably limits religious assemblies, institutions, or
structures within a jurisdiction.

42 U.S.C. § 2000cc(b).

The denial of the requested zoning variances at issue in this case invoke the same form of

strict scrutiny under the First Amendment as mandated by the RLUIPA statute.  Like the

RLUIPA statute, to sustain the Plaintiffs' Free Exercise claim under the First Amendment, the

Plaintiffs must demonstrate that the Township's actions impose a substantial burden on the

Church's religious conduct.  See Fraternal Order of Police Newark Lodge No. 12 v. City of

Newark, 170 F.3d 359, 361 (3d Cir. 1999 (noting that the Free Exercise Clause of the First

Amendment offers "religious exemptions from neutral, generally applicable laws that have the

7

incidental effect of substantially burdening religious conduct.") (citing Wisconsin v. Yoder, 406 U.S. 205, 220 (1972)).  Also like the application of the RLUIPA statute, Free Exercise jurisprudence requires the Court to apply strict scrutiny to the Township's denial of the Plaintiffs' zoning variances.  The issuance of zoning variances, like those at issue in this case, are part of a process of "individualized exemptions" from general zoning laws.  Freedom Baptist Church of Delaware County v. Township of Middletown, 204 F.Supp.2d 857, 868 (E.D.Pa. 2002).  Under the First Amendment's Free Exercise protections, religious justifications for such an exemption cannot be denied unless the Township can demonstrate a compelling state interest for the denial and that the denial represents the least restrictive means available to further that interest.  Sherbert v. Verner, 374 U.S. 398, 406 (1963).  See also Fraternal Order of Police, 170 F.3d at 366 (3d Cir. 1999).

The Defendants seek dismissal of the Plaintiffs' claims under the First Amendment and the RLUIPA, arguing that the Township's denial of the requested zoning variances did not substantially burden the Plaintiffs' religious exercise and, therefore, neither the First Amendment nor RLUIPA are implicated by the Township's actions.  The Defendants also argue that the denial of these variances furthered a compelling government interest and was the least restrictive means of furthering that interest, thereby complying with the requirements of both the RLUIPA and the First Amendment.

1.    *The Plaintiffs' Complaint Sufficiently States a Claim That the Township's Actions Impose a Substantial Burden on Their Religious Activities.*

Like the requirements for a Free Exercise claim under the First Amendment, in order for

8

the RLUIPA to apply to the Plaintiffs' claims, they must first demonstrate that the Township's

denial of their zoning variances imposes a "*substantial burden* on the[ir] religious exercise." 42

U.S.C. § 2000cc(a)(1) (emphasis added).  Once the Plaintiffs demonstrate the existence of a

substantial burden on the exercise of their religious beliefs, the RLUIPA then shifts the burden to

the Township to show that the challenged action furthers a compelling state interest by the least

restrictive means.  The Plaintiffs claim that by denying their requested variances and preventing

the Church's desired expansion, the Township "has substantially burdened its religious exercise

by preventing it from worshiping together as one congregation, participating in necessary

ministries, and being accessible to its congregation."  (Pl. Br. at 5.)  The Defendants argue that

the denial of these zoning variances do not constitute "a substantial burden on their religious

exercise" and, therefore, the Court should dismiss the Plaintiffs' claims under the RLUIPA and

the First Amendment.  (Def. Br. at 43.)

 The need for religious institutions to have the ability to develop "a physical space

adequate to their needs and consistent with their theological requirements" is at the heart of the

RLUIPA's land-use provisions.  146 CONG. REC. S7774-01, 7774 (daily ed. July 27, 2000) (Joint

Statement of Sen. Hatch and Sen Kennedy on the Religious Land Use and Institutionalized

Persons Act of 2000).  This was further recognized in the statutory language of the RLUIPA

which defines religious exercise as:

> (7) Religious exercise.
>  (A) In general. - The term "religious exercise" includes any exercise of
>   religion, whether or not compelled by, or central to, a system of
>   religious belief.
>  (B) Rule. - The use, building, or conversion of real property for the
>   purpose of religious exercise shall be considered to be religious
>   exercise of the person or entity that uses or intends to use the property

for that purpose.

42 U.S.C. § 20000cc-5.

Although the text of the statute contains no similar express definition of the term

"substantial burden," the RLUIPA's legislative history indicates that it is to be interpreted by

reference to RFRA and First Amendment jurisprudence. See 146 CONG. REC. 7774-01, 7776

(daily ed. July 27, 2000) ("The term 'substantial burden' as used in this Act is not intended to be

given any broader interpretation than the Supreme Court's articulation of the concept of

substantial burden or religious exercise").  "Substantial burden" has been defined or explained in

various ways by the courts. See, e.g., Thomas v. Review Bd. of the Indiana Employment Sec.

Div., 450 U.S. 707, 718 (1981) (exists where state "put[s] substantial pressure on an adherent to

modify his behavior and to violate his beliefs");  Sherbert, 374 U.S. at 404 (occurs when a person

is required to "choose between following the precepts of her religion and forfeiting benefits, on

the one hand, and abandoning the precepts of her religion . . . on the other");  Bryant v. Gomez,

46 F.3d 948, 949 (9th Cir.1995) (state action "prevent[s] him or her from engaging in conduct or

having a religious experience that is central to the religious doctrine"); Muslim v. Frame, 897

F.Supp. 215, 218 (E.D.Pa. 1995) (same) (citing Bryant, 46 F.3d at 949).

While specific definitions may vary, it is well established that a "'substantial burden'

must place more than an inconvenience on religious exercise," Midrash Sephardi, Inc. v. Town

of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004), and must have more of an impact than

"'mak[ing] the practice of [the individual's] religious beliefs more expensive.'" Stuart Circle

Parish v. Board of Zoning Appeals of Richmond, 946 F.Supp. 1225, 1237 (E.D.Va.1996)

(quoting Braunfeld v. Brown, 366 U.S. 599, 605 (1961) (plurality opinion)).  The Defendants

claim that the Plaintiffs' inability to worship as an entire congregation in their current facility does not constitute a "substantial burden" on their religious conduct.  (Def. Br. at 40.)  The limited Record before the Court, however, leaves the Court unable to render a decision at this early stage of the case that, as a matter of law, the denial of the zoning variances at issue in this case constitute either a mere "[in]convenience and expense" to the Church, as the Defendants allege (Def. Br. at 43), or a "substantial burden" on the Church's religious conduct, as required for the Plaintiffs' First Amendment and RLUIPA claims.  Accordingly, taking all allegations in the Complaint as true and viewing them in the light most favorable to the Plaintiffs as required for deciding a motion to dismiss under FED. R. CIV. PRO. 12(b)(6), the Court cannot agree with the Defendants assertion that "[t]he fact that the Plaintiffs cannot engage in worship with their entire congregation at the same time and place does not and cannot establish a substantial burden."  (Def. Br. at 40.)  The Defendants' motion to dismiss the Plaintiffs' claims on these grounds, therefore, is denied.

2.      *The Plaintiffs' Complaint Sufficiently States a Claim That the Township's Denial of Their Request for Zoning Variances Was Not the Least Restrictive Means for the Township to Further Their Compelling Government Interests.*

    The Defendants also allege that, should the Court find that the Plaintiffs' beliefs were substantially burdened, that the Township's decision to deny the Church's requested variances complied with the requirements of the RLUIPA and the First Amendment because the denials were "the least restrictive means of further[ing] a compelling government interest."  (Def. Br. at 45.)  For the reasons noted above, however, the Court finds the Record at this early stage of the

case is insufficiently developed to offer support for the Defendants' assertion that, as a matter of

law, "that 'the status quo is already the least restrictive' means."  (Def. Br. at 46.)  Accordingly,

taking all allegations in the Complaint as true and viewing them in the light most favorable to the

Plaintiffs under FED. R. CIV. PRO. 12(b)(6), the Defendants' motion to dismiss the Plaintiffs'

claims on these grounds is also denied.

**B.      The RLUIPA, as Applied in the Present Case, is Constitutional.**

The Defendants claim, in the alternative, that the Plaintiffs' RLUIPA claims should be

dismissed on the grounds that the RLUIPA's land use provisions are unconstitutional because

they go beyond Congress' enforcement powers under the Fourteenth Amendment, exceed

Congress' power under the Commerce Clause, violate the doctrine of separation of powers, the

10th Amendment, and the Establishment Clause of the First Amendment.

*1.      The RLUIPA's Land Use Provisions Do not Exceed Congress' Power Under the*

*Fourteenth Amendment.*

Section 1 of the Fourteenth Amendment prohibits the States from "depriv[ing] any person

of life, liberty, or property without due process of law," or from "deny[ing] to any person within

its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  Pursuant to

Section 5 of the Fourteenth Amendment, Congress may "enforce, by appropriate legislation, the

provisions of this article."[3]  Id. at § 5.  Under this grant of statutory authority, Congress enacted

_____

[3] Congress may also prohibit a "somewhat broader swath of conduct, including that which
is not itself forbidden by the Amendment's text," so long as such "prophylactic" legislation is
"congruent" and "proportional" to the injury to be prevented or remedied.  Kimel v. Florida Bd.

the RLUIPA in order to codify and secure the protections of the First Amendment's rights to free

exercise of religion as applied to the states by the Fourteenth Amendment.  See 146 CONG. REC.

S7774-01, 7775 (daily ed. July 27, 2000) ("Each subsection [of the RLUIPA] closely tracks the

legal standards in one or more Supreme Court opinions, codifying those standards for greater

visibility and easier enforceability."), H.R.REP. NO. 106-219, at 12-13.

The relevant application of the RLUIPA to the current case, § 2(a)(2)(C), applies only to

situations where individualized assessments by government officials are made in land-use

matters.  42 U.S.C. § 2000cc(a)(2)(C).  While the Free Exercise Clause does not relieve a person

of their obligations to comply with a neutral, generally applicable law, "subtle departures from

neutrality" and "covert suppression of particular religious beliefs" are forbidden.  Church of the

---

of Regents, 528 U.S. 62, 81 (2000) (citing City of Boerne v. Flores, 521 U.S. 507, 518 (1997)).
To the extent that, conceivably, the RLUIPA may cover a particular case that reaches beyond the
scope of well-established constitutional guarantees protected by Section 1 of the Fourteenth
Amendment, the Court finds it worth noting that the RLUIPA's land use provisions constitute the
kind of congruent and proportional remedy that Congress is empowered to adopt under Section 5
of the Fourteenth Amendment which allows Congress to put forth legislation that *exceeds* the
scope of those already established constitutional guarantees and prohibitions to remedy violations
of constitutional rights.  See City of Boerne, 521 U.S. at 520.  The legislative record of the
RLUIPA amply supports the notion that zoning laws are often applied in a manner that is hostile
to the free exercise of religion.  See 146 CONG. REC. S7774-01, 7775 (daily ed. July 27, 2000)
(outlining the testimony in the record demonstrating zoning discrimination against religious
uses).  These findings have similarly been echoed in a number of cases before the courts.  See,
e.g., Family Christian Fellowship v. County of Winnebago, 503 N.E.2d 367 (Ill.App.1986) (city's
refusal to permit church use of existing buildings was arbitrary and capricious); Islamic Center of
Mississippi, Inc. v. City of Starkville, 840 F.2d 293 (5th Cir.1988) (city denied a Muslim
organization a special use permit three times while granting such permits to every Christian
church that had applied); Marks v. City of Chesapeake, 883 F.2d 308, 309-10 (4th Cir.1989)
(city, acting "arbitrarily and capriciously," refused to grant a use permit because neighbors
disapproved of the religious practices of the applicant).  The Court is satisfied that the limited
protections offered by the RLUIPA's land use provisions are a congruent and proportional
measure in addressing the type of widespread constitutional violations documented in the
statute's legislative history, enabling these provisions to fall squarely within Congress'
Fourteenth Amendment powers.

13

Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 534 (1993) (internal quotation marks and

citations omitted).[4]  Zoning regulation, like the ones at issue in this case, impose individual

assessment regimes.  See Freedom Baptist, 204 F.Supp.2d at 868.  The process of granting

zoning variances requires a case-by-case evaluation of the proposed activity against the

prevailing land use regulations.  This makes them, by necessity, "different from laws of general

applicability which do not admit to exceptions on Free Exercise grounds."  Id. (citing

Employment Division, Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872, 890

(1990)).

        Applying the heightened level of scrutiny imposed by the RLUIPA's general rule, as

established in Section (a)(1), to these types of individualized assessments merely codifies the

jurisprudence in Free Exercise cases that originated with the Supreme Court's decision in

Sherbert v. Verner, 374 U.S. 398 (1963).  Under Sherbert, where a statute permits

"individualized exemptions" based on "good cause," the state cannot refuse to accept religious

reasons as "good cause" absent a compelling state interest that permits such denials by the least

restrictive means available.  Id. at 406.  To do otherwise would "effectively penalize the free

exercise of [a person's] constitutional liberties."  Id.  See also Hobbie v. Unemployment Appeals

Comm'n of Florida, 480 U.S. 136, 141 (1987) (reaffirming that strict scrutiny remains the

standard of review in an unemployment case involving religious a applicant); Thomas, 450 U.S.

at 718 ("The state may justify an inroad on religious liberty by showing that it is the least

restrictive means of achieving some compelling state interest."); Church of the Lukumi Babalu

_____

        [4] As the Supreme Court noted in Bowen v. Roy, "[i]f a state creates such a mechanism
[for individualized exceptions], its refusal to extend an exemption to an instance of religious
hardship suggests a discriminating intent."  Bowen v. Roy, 476 U.S. 693, 708 (1986).

                                        14

Aye, 508 U.S. at 537 (where individualized exceptions from a general requirement are available, the government "may not refuse to extend that system to cases of 'religious hardship' without compelling reason").  This understanding of religious exception jurisprudence has also been applied in Third Circuit precedent as well, which holds that "a law must satisfy strict scrutiny if it permits individualized, discretionary exemptions because such a regime creates the opportunity for a facially neutral and generally applicable standard to be applied in practice in a way that discriminates against religiously motivated conduct.".  Blackhawk v. Pennsylvania, 381 F.3d 202, 209 (3d Cir. 2004) (citing Church of the Lukumi Babalu Aye, 508 U.S. at 537, Smith, 494 U.S. at 884, and Fraternal Order of Police, 170 F.3d at 364-65).  See also Fraternal Order of Police, 170 F.3d at 366 (3d Cir. 1999) (holding where individualized exemptions indicate that government has made "a value judgment" secular reasons deserve exemptions which overcome the government's general interests, but religious reasons do not, "the government's actions must survive heightened scrutiny").  Because the provisions of the RLUIPA's Section (a)(1) "faithfully codifies the 'individual assessments' jurisprudence in the Sherbert through Lukumi line of cases [as well as the current jurisprudence of the Third Circuit,] [i]t is therefore not constitutionally exceptional." Freedom Baptist Church, 204 F.Supp.2d at 869.  See also United States v. Maui County, 298 F.Supp.2d 1010, 1016 (D.Hawai'i, 2003) ("If, as the Court finds here, [the] RLUIPA codified existing precedent regarding when to apply the strict scrutiny test (i.e., if a generally applicable and neutral law also contains exceptions based upon 'individual assessments' which can be used in a pretextual manner–as is the special use permit process) then it is Constitutional.").

2.      *The RLUIPA's Land Use Provisions Do not Exceed Congress' Power Under the*

        *Commerce Clause.*

Congress identified its authority under the Spending Clause of Article I, § 8 as its first

source of power to adopt the RLUIPA.  146 CONG. REC. S7774-01, 7774 (daily ed. July 27,

2000) ("[The RLUIPA] applies only to the extent that Congress has power to regulate under the

Commerce Clause, the Spending Clause, or Section 5 of the Fourteenth Amendment.").  The

Defendants contend that Congress exceeded its authority when it adopted the RLUIPA because it

"regulates that which is not economic in nature, and therefore cannot be valid legislation under

the Commerce Clause."  (Def. Br. at 23.)  The jurisdictional 'hook' under which the RLUIPA

would be applied under the Commerce Clause, is provided by subsection (a)(2)(B), which limits

the application of the RLUIPA to cases where:

> the substantial burden affects, or removal of that substantial burden would affect,
> commerce with foreign nations, among the several States, or with Indian tribes, even
> if the burden results from a rule of general applicability.

42 U.S.C. § 2000cc(a)(2)(B).  The application of this jurisdictional element, by definition,

prevents the RLUIPA from exceeding the bounds of Congress' power under the Commerce

Clause.  If, as the Defendants argue, the Court finds that the regulations at issue "do[] not

regulate that which is economic" (Def. Br. at 24), then this subsection of the RLUIPA would not

apply.  If, however, the Court finds that the regulations at issue do affect interstate commerce,

then this subsection of the RLUIPA would apply as a valid exercise under the Commerce Clause.

In either case, the application of the RLUIPA under subsection 2(a)(2)(B) would not overstep the

limits of Congress' powers under the Commerce Clause.  See Freedom Baptist Church, 204

F.Supp.2d at 867-68 ("[I]nsofar as state or local authorities 'substantially burden' the economic

activity of religious organizations, Congress has ample authority to act under the Commerce

Clause."); Hale O Kaula Church v. Maui Planning Com'n, 229 F.Supp.2d 1056, 1071-72

(D.Hawai'i 2002) (concluding that the jurisdictional qualification of the RLUIPA § 2(a)(2)(B)

precludes Commerce Clause challenges).

3.      *The RLUIPA's Land Use Provisions Do Not Violate the Doctrine of Separation of*
        *Powers or the Tenth Amendment.*

        The Defendants further challenge the validity of the RLUIPA's land use provisions by

claiming that, by "unilaterally decid[ing] that neutral, generally applicable land use laws should

be subject to a judicial standard of review, strict scrutiny, as opposed to the rationality review

demanded by the Free Exercise Clause . . . [Congress] dramatically and unilaterally altered free

exercise rights, and therefore stepped into the judiciary's domain."  (Def. Br. at 28.)  The

Defendants further claim that the RLUIPA violates the "Constitution's inherent limits of

federalism" by interfering with "an arena that naturally and traditionally has belonged to local

control–land use."  (Def. Br. at 31.)

        It has been long established that ultimate authority to interpret the Constitution resides in

the Judicial Branch.  Marbury v. Madison, 5 U.S. 137, 177 (1803).  Under the doctrine of

separation of powers, the Executive and Legislative Branches are precluded from reviewing and

revising specific judgments of the Judiciary Branch.  Miller v. French, 530 U.S. 327, 342 (2000)

(noting that the Constitution gives federal courts "'the power, not merely to rule on cases, but to

*decide* them, subject to review only by superior courts in the Article III hierarchy.'") (quoting

Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218-19 (1995)) (emphasis in original).

17

While the RLUIPA was passed largely in response to the Supreme Court's partial invalidation the RLUIPA's predecessor, the RIFRA, in <u>City of Boerne</u>, it does not revise or reviewing a specific ruling of the Supreme Court. As noted above, the application of the RLUIPA at issue in this case merely codifies existing "individual assessment" jurisprudence as established by the Supreme Court and as interpreted by additional precedent within this Circuit. Because the RLUIPA acts to codify firmly-established rights, it does not attempt to legislate the type of "substantive change in constitutional protections" that was deemed invalid by the Court in <u>City of Boerne</u> and does not represent an improper infringement of Congress into the sphere of judicial power. <u>City of Boerne</u>, 521 U.S. at 509.

The relevant inquiry, moreover, should focus on whether or not Congress acted within the scope of its constitutional authority. In the case of the RLUIPA, as applied in this case, this Court is satisfied that it has. Because Congress acted within their constitutional authority in enacting the RLUIPA § 2(a)(1), as limited in this case by §§ 2(a)(2)(B) and 2(a)(2)(C), the Defendants claims that the statute is invalid under the Tenth Amendment and general notions of federalism cannot be sustained. "'[The] RLUIPA does not require State or local governments to legislate on behalf of the federal government, or require State officials to administer any federal program. Land use regulation is left to the States and local governments under [the] RLUIPA; they are simply prohibited from imposing substantial burdens on religious exercise in the process.'" <u>Castle Hills First Baptist Church v. City of Castle Hills</u>, 2004 WL 546792, *19 (W.D.Tex. March 17, 2004) (quoting <u>Life Teen, Inc. v. Yavapai County</u>, 2003 U.S. Dist. LEXIS 24363 (D.Ariz. March 26, 2003) (citations omitted)).

18

4.      *The RLUIPA's Land Use Provisions Do Not Violate the First Amendment's*

        *Establishment Clause.*

Under the Establishment Clause of the First Amendment, "Congress shall make no law

respecting an establishment of religion."  U.S. CONST. amend. I.  The Congress, however, is not

required to be "oblivious to impositions that legitimate exercises of state power may place on

religious belief and practice."  Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet, 512

U.S. 687, 705 (1994).  Government may, and sometimes must, "accommodate religious practices

and . . . may do so without violating the Establishment Clause."  Corporation of the Presiding

Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327, 334 (1987).

The current test for statutes offering religious accommodations was established by the

Supreme Court in Lemon v. Kurtzman, 403 U.S. 602 (1971).  To pass scrutiny under the Lemon

test, "the statute must have a secular legislative purpose, . . . its principal or primary effect must

be one that neither advances nor inhibits religion, . . . [and] the statute must not foster 'an

excessive government entanglement with religion.'" Lemon, 403 U.S. at 612-13 (quoting Walz v.

Tax Comm'n, 397 U.S. 664, 674 (1970)).   The Defendants, in their brief, contend that the land-

use provisions of the RLUIPA "violate[] the principles set forth in Lemon v. Kurtzman" and fail

"all three prongs of its test." (Def. Br. at 32.)  Numerous other courts that have evaluated this

issue have expressly held that the land use provisions of the RLUIPA do not violate the three-

pronged Lemon test.  See, e.g., Midrash, 366 F.3d at 1241 (finding the RLUIPA's land use

provisions not to violate the Establishment Clause under the Lemon test);  Mayweathers v.

Newland, 314 F.3d 1062, 1069 (9th Cir. 2002) ("Because [the] RLUIPA has a secular legislative

purpose, its primary effect is neither to advance nor inhibit religion, and it does not foster

excessive government entanglement with religion, [the] RLUIPA does not violate the

Establishment Clause."); <u>Congregation Kol Ami v. Abington Township</u>, 2004 WL 1837037, *13

(E.D.Pa. August 17, 2004) (finding, "in accordance with the majority of courts," that the

RLUIPA's land use provisions pass the <u>Lemon</u> test);  <u>Castle Hills</u>, 2004 WL 546792 at *18

(same).  For the reasons noted below, this Court concurs with the weight of authority cited above

that RILUIPA must survive the Defendants' Establishment Clause challenge.  Accordingly, the

Defendant's motion to dismiss the Plaintiffs' claims on these grounds is denied.

a.      <u>The RLUIPA has a secular purpose under</u> <u>Lemon</u>.

Although the RLUIPA is an accommodation statute that singles out religious practices,

the statute nonetheless has a secular purpose as defined in <u>Lemon</u>.  The <u>Lemon</u> test's requirement

that a law have a secular purpose "does not mean that the law's purpose must be unrelated to

religion--that would amount to a requirement 'that the government show a callous indifference to

religious groups,'" <u>Amos</u>, 483 U.S. at 335 (quoting <u>Zorach v. Clauson</u>, 343 U.S. 306, 314

(1952)).  The secular purpose requirement of <u>Lemon</u> is to prevent governmental decision makers

"from abandoning neutrality and acting with the intent of promoting a particular point of view in

religious matters."  <u>Id.</u>  Like the RLUIPA's institutionalized-persons provisions, the RLUIPA's

land use provisions are designed to "alleviate[] exceptional government-created burdens on

private religious exercise."  <u>Cutter</u>, 125 S.Ct. at 2118 n. 3.   Such statutes are expressly permitted

under the first prong of the <u>Lemon</u> test.  <u>Id.</u>

b.      <u>The RLUIPA's principal or primary effect neither advances nor inhibits religion under</u>
        <u>Lemon</u>.

The Defendants argue that the RLUIPA's land-use provisions fail the second-prong of the

<u>Lemon</u> test because they "give religious landowners special rights against the laws that make communities work, regardless of any showing of animus or hostility." (Def. Br. at 32.) As the Supreme Court noted, however, "[r]eligious accommodations . . . need not 'come packaged with benefits to secular entities." <u>Cutter</u>, 125 S.Ct. at 2123 (quoting <u>Amos</u>, 483 U.S. at 338). To accept the Defendants' view that the land-use provisions of the RLUIPA violate the Establishment Clause because it confers special accommodations to religious landowners would require "all manner of religious accommodations [to] fall." <u>Id.</u> <u>See also</u> <u>Amos</u>, 483 U.S. at 338 ("[The Court] has never indicated that statutes that give special consideration to religious groups are <i>per se</i> invalid. That would run contrary to the teaching of our cases that there is ample room for accommodation of religion under the Establishment Clause."). "The RLUIPA, by its own terms, has done nothing to actively advance religion. All it has done is advance the ability of people to engage in the free exercise of their religious beliefs without unnecessary government burdens. This fact does not make it unconstitutional." <u>Congregation Kol Ami</u>, 2004 WL 1837037 at * 14.

c.      <u>The RLUIPA Does Not Create Excessive Government Entanglement With Religion.</u>

The Defendants claim that the RLUIPA's land use provisions fail the third prong of <u>Lemon</u> "because there is now necessary entanglement, including possible litigation, every time a state or local government seeks to apply a content-neutral, generally applicable land use law to a religious landowner." (Def. Br. at 33.) Statutes, like the RLUIPA, that limit government interference with religious exercise do not, however, entangle government and religion, but rather "effectuate a more complete separation of church and state." <u>Williams v. Bitner</u>, 285 F.Supp.2d 593, 601 (M.D.Pa. 2003) (citing <u>Amos</u>, 483 U.S. at 335). Furthermore, as noted

above, the type of considerations mandated of government entities under the RLUIPA statute in

considering whether to grant zoning variances to religious landowners are no more than is

required under current First Amendment jurisprudence.  Accordingly, the RLUIPA's land-use

provisions at issue in this case are constitutionally permissible under the third prong of the

Lemon test as well.


**C.      The Plaintiffs' Complaint Fails to State a Violation of Due Process Under the**

**Fourteenth Amendment.**

Count VI of the Plaintiffs' Complaint alleges that the Township deprived the Church of

"due process of law, as secured by the Fourteenth Amendment . . . by denying Plaintiffs use of

their property based on an irrational, unreasonable and discriminatory motivation, and by

applying vague statutes, ordinances and regulations against them."  (Compl. at 40, ¶ 164.)  The

Plaintiffs' Complaint, however, does not specify whether they are claiming a violation of their

substantive or procedural due process rights.

To sustain a claim for deprivation of procedural due process would require the Plaintiffs

to demonstrate the deprivation of a property interest that was not "preceded by notice and

opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v.

Loudermill, 470 U.S. 532, 542 (1985) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339

U.S. 306, 313 (1950)).  The Plaintiffs do not contend that the application and approval process

for securing a zoning variance from the Township was deficient to meet this standard for

procedural due process protections.  In their Complaint, the Plaintiffs note that they were

engaged in public hearings on the zoning variances for "over two and one-half years," inferring

that the Township afforded in too much, rather than too little, opportunity to be heard on these variances.[5] (Compl. at 16, ¶ 68.)  The Court, therefore, finds that Plaintiffs' Complaint does not sufficiently allege a violation of their procedural due process rights.

Absent a procedural due process violation, the Court must examine to see whether the Complaint sufficiently alleges a violation of the Plaintiffs' substantive due process rights.  The threshold for a substantive due process violation, however, is quite high. "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392, 399 (3d Cir. 2003) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)) (emphasis in original).  See also Fagan v. City of Vineland, 22 F.3d 1296, 1303 (3d Cir.1994) (en banc) ("[T]he substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience.'").  The crux of the Plaintiffs' complaint is that they received an adverse ruling from the Township regarding their requests for zoning variances. Every appeal from an adverse ruling of a local planning board involves some form of claim that the planning board abused its legal authority.  This is not the type of behavior, however, that meets the high threshold for a substantive due process violation. As the Third Circuit cautioned, "[l]and-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." United Artists, 316 F.3d at 402.

---

[5] The Plaintiffs cite to twenty four public hearings held on their zoning application between September 18, 2000 and August 25, 2004.  (Compl. at 20, ¶ 82.)

Accordingly, the Defendants' motion to dismiss Count VI of the Plaintiffs' Complaint is granted.

**D.      The Plaintiffs' Complaint Sufficiently States a Violation of Equal Protection Under the Fourteenth Amendment.**

In Count V of their Complaint, the Plaintiffs allege that the Township violated their rights to equal protection under the Fourteenth Amendment by "discriminating against Plaintiffs in their application" for zoning variances.  (Compl. at 39 - 40, ¶ 162.)  To establish an equal protection claim, the Plaintiffs must establish that they were treated differently from other similarly situated persons who were granted similar variances in a similarly zoned parcel of land. See Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  See also Congregation Kol Ami v. Abington Township, 309 F.3d 120, 137 (3d Cir. 2002) ("[T]he first inquiry a court must make in an equal protection challenge to a zoning ordinance is to examine whether the complaining party is similarly situated to other uses that are either permitted as of right, or by special permit, in a certain zone.").  If the Plaintiffs demonstrate that they have been treated differently from another similarly situated use, then the Township must justify its actions by showing that the differing treatment is rationally related to a legitimate state interest.. Id.  See also Cleburne, 473 U.S. at 440;  The Lighthouse Institute for Evangelism, Inc. v. City of Long Branch, 406 F.Supp.2d 507, 523 (D.N.J. 2005) ("If two similarly situated uses are treated differently, a land use ordinance will be deemed irrational if the stated interest asserted to justify the different treatment is either illegitimate (an ends focus) or the classification is not rationally related to the interest (a means focus).").

The Plaintiffs' Complaint alleges that the Township has granted zoning variances to other

24

churches located in R-10 zones within the town.  (Compl. at 13, ¶ 54.)  Consistent with the standard for reviewing a motion to dismiss under FED. R. CIV. PRO. 12(b)(6), the Court must view this allegation as true and view in the light most favorable to the Plaintiffs.  Accordingly, the Court finds that the Plaintiffs have sufficiently alleged that other similarly situated uses within the Township's R-10 zones were granted variances similar to the ones sought by the Church in the present case.  This places the burden on the Township to either refute the allegation or to demonstrate why the denial of the Church's variances, as opposed to any given to similarly situated churches, were rationally related to a legitimate state interest.  The Record at this stage of the case, however, is insufficient for the Township to properly do either.  Accordingly, the Defendants motion to dismiss Count V of the Plaintiffs' Complaint is denied.


### III.   CONCLUSION

For the reasons stated above, and for good cause shown, the Court **DENIES IN PART AND GRANTS IN PART** the Defendants' Motion to Dismiss.  An appropriate form of order will be filed herewith.



Date:   February 24, 2006


  s/Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.


25